IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS FITTS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case |
| ) | No.3:10-cv-494-DRH-DGW |
| RICK HARRINGTON, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

Pending now before is the Petition for a Writ of Habeas Corpus filed by petitioner, Dennis Fitts (Doc. 1). For the reasons set forth below, the Petition is **DENIED** and his matter is **DISMISSED with prejudice**.

I. **FINDINGS OF FACT**

Petitioner, Dennis Fitts, was convicted of first degree murder and two counts of aggravated battery with a firearm in the death of Carolyn Riley and the battery of Dempsey Crim. The state court records, to which petitioner does not object,[1] reveal that Ms. Riley was a confidential informant who provided assistance and testimony related to drug charges against petitioner and his friend, Dennis Sims (Doc. 11-1). After Ms. Riley testified at the trial of Mr. Sims, petitioner entered Ms. Riley's home, shot Mr. Crim and killed Ms. Riley. Petitioner was indicted on July 2, 1997, five months after the murder, on evidence that was acquired pursuant to a

---

[1] These records are presumed to be correct, petitioner has not offered any argument to rebut this presumption. 28 U.S.C. § 2254(e)(1).

search warrant. That search warrant was based on an affidavit that contained the statements of two confidential sources who essentially stated that Mr. Sims, petitioner's friend, indicated that petitioner would give Ms. Riley "what's coming to her." In particular, the affidavit was signed by Officer Scott Deming who testified (at a hearing on a motion to quash) that one confidential informant identified in the affidavit was Michael Snell, a jailhouse informant who shared a cell with Mr. Sims. Officer Deming further testified that he did not interview Mr. Snell himself and that the information contained in the affidavit was conveyed by Special Agent (State Police) Al Burton and State's Attorney Joe Jackson. In particular, the affidavit stated:

> *** Affiant knows that a confidential source, herein referred to as confidential source number 1, advised that following the trial of Derrick Sims which concluded on January 28, 1997[,] and before the murder of Carolyn Riley on February 6, 1997[,] that [sic] Derrick Sims stated words to the effect that he had talked to 'his man Dennis from Clinton[,] Kentucky[,] …' and that 'the bitch is going to get what's coming to her …[.]' Further, that [sic] on February 7, 1997[,] that [sic] a confidential source, hereinafter referred to as confidential source number 2, heard Derrick Sims state words to the effect 'the bitch got what was coming to her …['] [and] ['] I guess the bitch snitched on the wrong person …' and that Derrick Sims appeared to be quite pleased upon hearing news of the murder of Carolyn Riley.
>
> (Doc. 11-1, p. 3) (internal quotation, citation, and editing marks retained).

Officer Deming further stated that confidential source number 1 and number 2 were one-and-the-same, Mr. Snell, and that two separate identifiers were used to protect his identity.[2] Mr. Snell also testified that he did not hear these statements

---

[2] Petitioner indicates that the second confidential source (who presumably was identified as

from Mr. Sims in one conversation or sentence. Mr. Snell's attorney, Paul Henry, testified that Mr. Snell told State's Attorney Jackson that he overheard these statements in one conversation, but that Mr. Snell would not sign an affidavit that they were made in one sentence. Finally, Special Agent Burton testified that Mr. Snell made these statements to him when he interviewed Mr. Snell. Petitioner was ultimately sentenced to 60 years on the murder count and 30 years on two counts of aggravated battery, to run consecutively.

Petitioner appealed his sentence and conviction on May 17, 1999 (Doc. 11-1, p. 12). He argued that the trial court erred in failing to quash the search warrant (because it contained false statements,[3] did not attest to the reliability of the informant, and contained insufficient evidence to support probable cause), that the trial court erred in allowing the testimony of the victim's daughter, and that the statements of the prosecutor in closing arguments were unduly prejudicial (Doc. 11-1, p. 17). In a Rule 23 Order, the Illinois Court of Appeals found that:

1. The affidavit did not contain false statements because "the structure of the affidavit makes clear that Snell did not attribute these statements to Sims in one single, uninterrupted sentence" (Doc. 11-1, p. 6).

2. "It is [ ] unnecessary for police to establish prior reliability to corroborate Snell's statements" because he was not a "professional" informant but rather a "citizen-informant" (*Id.* p. 7).

3. The affidavit was sufficient to support probable cause because it

---

"confidential source number 3" in the affidavit), is a Donald Thomas.
[3] Petitioner challenged various aspects of the affidavit including that confidential sources 1 and 2 were the same person, that the statements attributed to Mr. Snell were not accurate recitations in that the statements were not made in one sentence, and that the evidence contained therein was insufficient to support a probable cause determination (Doc. 11-1, pp. 34-40, Doc. 11-3, pp. 28-30).

>stated that the victim had informed on Petitioner, that two informants heard Mr. Sims indicate that he would be seeking revenge, and Petitioner was observed wearing the same type of footwear the impressions of which were found at the crime scene (*Id.* p. 7-8).

With respect to the two remaining arguments, the Court of Appeals found that neither the testimony nor the statements were unduly prejudicial. Petitioner filed a Petition for Leave (PLA) to Appeal on June 20, 2000, (Doc. 11-3, p. 1), which was denied on November 29, 2000. *People v. Fitts*, 742 N.E.2d 331 (table) (Ill. 2000). In his PLA, petitioner raised the grounds indicated above and also asserted that he did not get a fair trial because there were no African-Americans on the jury panel and that his appellate counsel was ineffective for failing to raise this claim (Doc. 11-3, p. 5).

Petitioner filed a post-conviction petition that resulted in an order that reduced petitioner's life sentence for murder to 60 years' imprisonment; otherwise, petitioner's claims, including that a witness, Quentin Fayne, provided perjured testimony, were rejected[4] (Doc. 11-3, pp. 41-42). On appeal, petitioner only argued that that his post-conviction counsel was ineffective in a variety of ways (Doc. 11-3, pp. 91-92). A Rule 23 Order issued by the Illinois Court of Appeals on September 1, 2009 rejected petitioner's arguments (Doc. 11-3, p. 35). In doing so, the Court of Appeals indicated that petitioner had waived any ineffective assistance of trial and appellate counsel by failing to raise these claims on appeal (Doc. 11-3, p. 39). Petition filed a PLA on September 28, 2009, raising the same arguments he

---

[4] Except for the perjured testimony claim, on which the trial court held an evidentiary hearing, the remaining arguments were found to be waived (Doc. 11-3, p. 42).

made before the Court of Appeals, (Doc. 11-3, p. 146), which was denied on November 25, 2009. *People v. Fitts*, 920 N.E.2d 1076 (table) (Ill. 2009).

Before this Court, petitioner first argues that his Fourth Amendment rights were violated when the trial court failed to quash the search warrant. Petitioner contends that the affidavit in support of the warrant contained false statements, that it failed to indicate the reliability of the informants, and that the information contained did not support probable cause to arrest (Doc. 1, p. 10). These are the same arguments petitioner made on direct appeal. Petitioner then states, without the benefit of argument, that the probable cause hearing before the state courts was not "full and fair." However, in a Traverse (Doc. 14), petitioner supports his claim with some argument and attaches a transcript of the probable cause hearing and a copy of the affidavit in support of the search warrant.

Petitioner next appears to raise a *Batson v. Kentucky*, 476 U.S. 79 (1986), claim that the "trial court erred in allowing a jury to be impaneled with no minorities with the petitioner, Mr. Fitts, being an African-American" (Doc. 1, p. 14). This argument was only made in petitioner's first PLA filed in 2000. Petitioner does not elaborate on this claim in his Petition. In his Traverse, petitioner concedes that this claim is procedurally defaulted.

## II. CONCLUSIONS OF LAW

Title 28 U.S.C. §2254 provides that the Court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of the State court only on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States." Accordingly, "[f]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law." *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir. 1989). Before seeking such relief, a petitioner is required to exhaust available state remedies. 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). While respondent confirms that petitioner has exhausted, respondent argues that his Fourth Amendment claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976), and that his jury selection claim is procedurally defaulted.

In *Stone v. Powell*, the Supreme Court considered whether the federal courts should consider a Fourth Amendment claim by a state prisoner, who argues that he was convicted on evidence acquired from an unconstitutional search or seizure, when "he has previously been afforded an opportunity for full and fair litigation of his claim in the state courts." *Id.* at 469. The Court answered this question by holding that: "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Id.* at 481-82; *see Monroe v. Davis*, 712 F.3d 1106, 1112-1113 (7th Cir. 2013). A full and fair hearing can be found if "the state court heard the claim, looked at the right body of case law, and rendered an intellectually honest decision." *Monroe*, 712 F.3d at 1114; *see also Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992). In determining whether full and fair litigation was provided, this Court should not

focus on the correctness of the state court's decision but rather on whether the state courts adequately addressed a Fourth Amendment claim. *Cabrera v. Hinsley*, 324 F.3d 527, 530-32 (7th Cir. 2003). Thus,

> It takes an 'egregious error' to imply that the state judges have closed their ears and minds to argument—and it is the latter circumstance, not the error itself, that would justify relief under *Stone*. Even an 'egregious error' thus is not enough to support a writ of habeas corpus (that's what it means to say that the exclusionary rule does not apply on collateral attack); a blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment.

Hampton v. Wyant, 296 F.3d 560, 564 (7th Cir. 2002).

Petitioner argues that the state court process was inadequate because it never inquired into whether Mr. Snell's testimony could be corroborated, the trial court was misled by the omission of facts relating to the source of information, and, fraud was committed on the trial court because of inconsistent testimony. Petitioner's arguments, however, fall into the trap outlined by the Seventh Circuit in *Cabrera*: he essentially is arguing that the trial court should have ruled differently on his Fourth Amendment claim. Petitioner received a hearing before the trial court on his claim that the search warrant should be quashed. The record reveals that petitioner received a hearing on April 7, 1998 before Judge Terry J. Foster. At that hearing, he was given the opportunity to examine the parties involved in the search warrant and make argument as to the correct law to be applied by the judge. Petitioner's trial attorney raised the very same arguments that he has raised in this Court – that the affidavit contained false information because it implied statements

made by Mr. Sims were made in one sentence; that more persons than in reality heard these statements; that Mr. Snell was not reliable; and that there is no corroboration (Doc. 15, pp. 48-49). He later raises these grounds on direct appear and the claim was rejected by the Illinois Court of Appeals in a written opinion. Petitioner also raised this ground for relief in a PLA.

In considering his claims the trial court states that "even if the statements attributed to Michael Snell were excised, the remainder of the affidavit would have established probable cause for the search warrant" (Doc. 11-1, p. 5). As indicated above, the Illinois Court of Appeals found that the structure of the affidavit, and in particular the paragraph outlining Mr. Snell's statements, did not imply that the statements were made in one sentence. This finding is both consistent with the evidentiary hearing held before the trial court and the affidavit provided by Mr. Snell (Docs. 11-1, pp. 75-76, 15); and, the finding that Mr. Snell's statements need not be corroborated does not appear to be blunder, let alone an obvious blunder, that would render the state court proceedings infirm. *See United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991) (in discussing "citizen witnesses" stating that "if it seems reasonable to the police to believe that the eyewitness was telling the truth, they need not take any additional steps to corroborate the information regarding the crime before taking action."). Moreover, both the trial court and the court of appeals found that other facts supported probable cause: that the victim had testified against petitioner, that petitioner was seeking revenge because of that testimony, and that the same type of shoes worn by petitioner left an

impression at the crime scene. These factors, the court of appeals indicated, "are more substantial than mere suspicion on the part of the law enforcement officials" (Doc. 11-1, p. 7-8); *see United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009) ("Probable cause is a practical, nontechnical inquiry that asks whether there is a fair probability, given the totality of the circumstances, that evidence of a crime will be found in a particular place."). It is clear that the state court proceedings were not a mere sham and that petitioner was given an "opportunity for full and fair litigation" before the Illinois state courts. The Illinois courts held a hearing, allowed petitioner to present his evidence and make his arguments, applied the correct case law, and rendered opinions that appear to be intellectually honest. That those Courts ultimately rejected petitioner's claim is not grounds for federal habeas relief.

With respect to petitioner's second claim, he concedes that it is procedurally defaulted. Prior to reaching the merits of a claim, the exhaustion requirement requires that petitioner "fairly present his federal claims to the state courts by arguing both the law and the facts underlying them." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010). Fair presentment requires that petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In asserting an ineffective assistance of counsel argument, petitioner is also required to raise each "specific ground for ineffectiveness." *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998). In order

to preserve defaulted claims, petitioner must show cause and prejudice that would excuse the default. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

> Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner for presented his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.
>
> *Id.* (internal citations and editing marks omitted).

Petitioner raised a claim regarding the racial make-up of his jury for the first time in his PLA on direct appeal. Petitioner did not raise this claim in his collateral attack before the state courts. This claim was not, therefore, fairly presented to the state courts and is procedurally defaulted. By conceding this result, petitioner has not shown any cause and prejudice related to this default.

### III.  CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED** and the matter is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Signed this 26th day of September, 2013.

Digitally signed by David R. Herndon
Date: 2013.09.26 15:14:50 -05'00'

**Chief Judge**
**United States District Court**